United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DUSTIN FARRIS, § | |
|    Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-19-3872 |
| § | |
| STATE FARM LLOYDS, § | |
|    Defendant. § | |

## MEMORANDUM AND ORDER

This insurance coverage dispute is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 19] filed by Defendant State Farm Lloyds ("State Farm"). Plaintiff Dustin Farris filed a Response [Doc. # 23] in opposition to the Motion, and State Farm filed a Reply [Doc. # 34]. Having reviewed the full record and the applicable legal authorities, the Court **grants** State Farm's Motion.

## I. BACKGROUND

State Farm issued an insurance policy, No. 53-C2T-3564 (the "Policy"), that provided coverage for Plaintiff's residence[1] located at 2426 Saint Beulah Chapel Road, Montgomery, Texas (the "Property"), for the period June 28, 2017 to June 28, 2018. The Policy contained a $2,534.00 wind/hail deductible and $1,267.00 deductible for other insured losses. The Policy also contained an Exclusion of

---

[1] Plaintiff and his father built the house, which was Plaintiff's first time installing a metal roof. *See* Plaintiff's Deposition, Exh. D to Motion, pp. 6, 28.

Cosmetic Loss to Metal Roof Coverings Caused by Hail ("Cosmetic Damage Endorsement"), which defined "cosmetic loss" as:

> loss that alters the physical appearance of the metal roof covering but does not result in the penetration of water through the metal roof covering or does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

Cosmetic Damage Endorsement, Exh. A-1 to Motion, ¶ 1.

Plaintiff alleges that the Property sustained severe damage from a wind and hail storm on March 18, 2018. Plaintiff filed his claim, number 537729T56, with State Farm on February 18, 2019.

On March 8, 2019, State Farm adjuster John Altemose inspected the Property. Altemose found no wind or hail damage to the roof of the Property, but noted a potential hail mark on a mercury light fixture. Altemose found interior water damage in the laundry room and in a nursery, but he determined this damage was not from any storm-related roof damage. A second inspection by a different State Farm adjuster on July 30, 2019, confirmed Altemose's findings. State Farm's estimate of the cost to repair this interior water damage to the laundry room and the nursery was below the Policy deductible.

On September 3, 2019, Plaintiff filed this lawsuit in the 284th Judicial District Court of Montgomery County, Texas. State Farm filed a timely Notice of Removal

[Doc. # 1] on October 7, 2019. Plaintiff alleges that the damage to the Property is estimated at $30,536.00. *See* Petition [Doc. # 1-3], ¶ 17.

After the close of discovery, State Farm filed the pending Motion for Summary Judgment. The Motion has been fully briefed and is now ripe for decision.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594. Where the movant bears the burden of proof at trial on the issues at hand, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

For summary judgment, the initial burden falls on the movant to identify areas in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific evidence showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Although the Court may not make credibility determinations or weigh any evidence, the Court is not required to accept conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Instead, the nonmoving party must present evidence of specific facts that show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara*, 353 F.3d at 405 (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## III.   BREACH OF CONTRACT CLAIM

State Farm argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has failed to present evidence that raises a genuine issue of material fact that State Farm failed to pay for damage to the Property that was covered under the Policy. Plaintiff's causation expert, Neil Hall, organized the opinions in his Report based on four "Areas of Interest."[2] *See* Hall Report [Doc. # 23-6], pp. 5-6. In the Hall Report, Area of Interest # 1 is the laundry room at the Property, Area of Interest # 2 is the nursery, Area of Interest # 3 is the Property's roof, and Area of Interest # 4 is the roof of the garage. State Farm used these same "Areas

---

[2]  Hall testified in his deposition that he offered no opinions on coverage. *See* Deposition of Neil Hall, Exh. E to Response, p. 32.

of Interest" in its Motion to address Plaintiff's breach of contract claim, and the Court will do the same.

### A.     Area of Interest # 1 - Laundry Room

It is Hall's opinion that damage to the wall in the laundry room "resulted from rainwater dripping off the forward edge of the R-panels" of the roof. *See* Hall Report, p. 5.  Hall noted that the forward edge of the R-panels did not extend beyond the face of the veneer on the side of the house and, therefore, "did not extend far enough past the wall to prevent rainwater dripping off the edge from traveling to the opening." *See id.* at 4-5.  In his deposition, Hall identified this problem as an "original design problem," and testified that this condition causing damage to the laundry room wall likely existed prior to March 18, 2018.  *See* Deposition of Neil Hall, Exh. E to Response, pp. 91, 97-98.  In his subsequent Declaration, Hall stated that the damage in the laundry room was not caused by wind or hail and, instead, was a "chronic problem as opposed to an episodic cause of loss" and resulted from "improperly cut roof panels." *See* Hall Declaration, Exh. G to Response, ¶¶ 12, 14.

Hall in his Report, deposition testimony, and declaration is unequivocal that the damage to the laundry room was not caused by wind or hail on March 18, 2018 and, instead, was the result of the roof panels being improperly sized such that they did not extend far enough to prevent rainwater from dripping off the edge of the roof into the

opening behind the veneer. As a result, State Farm is entitled to summary judgment on the breach of contract claim relating to Area of Interest # 1, the laundry room.

**B.     Area of Interest # 2 - Nursery**

In the Hall Report, Hall opined that the damage to the nursery ceiling was "the result of water having penetrated the metal roof at locations hidden from view during the field inspection." *See* Hall Report, p. 6. In his deposition, Hall testified that there appeared to be wind damage to the roof over the nursery. *See* Hall Depo., pp. 46-47. He has conceded, however, that he has not found any openings in the roof. *See* Hall Decl., ¶ 15. Hall further conceded that the maximum wind velocity on March 18, 2018 was 32 miles per hour, *see id.*, ¶ 13, and that he has no reason to believe that the winds on March 18, 2018 were not extraordinary winds, *see* Hall Depo., p. 86.

In support of his opinion regarding wind having caused damage to the roof over the nursery, Hall relied primarily on his understanding that Plaintiff first noticed the leak above the nursery shortly after the March 18, 2018 reported date of loss. *See* Hall Report, p. 5; Hall Depo., pp. 51-52. Based on weather data that Hall reviewed, he believed that it was just as likely that the damage occurred on August 11, 2018, a date outside the Policy Period. *See* Hall Depo., p. 82. Hall, however, selected March 18, 2018, instead of August 11, 2018, as the date on which the wind-caused damage to the nursery occurred. *See* Hall Report, p. 4.

As noted above, Hall believed that Plaintiff first noticed the leak above the nursery shortly after March 18, 2018. Plaintiff in his deposition testified that he first noticed the leak in June or July of 2018, after "there'd been some storms and there'd been raining overnight." *See* Plaintiff's Depo., p. 8. Later he testified, however, that he based his statement that he first noticed the leak in June or July of 2018 on his mistaken belief that he filed his claim with State Farm in June or July of 2018. *See id.* at 50. Therefore, if Plaintiff first noticed the leak around the time he filed his claim with State Farm in February 2019, he would have noticed the leak after – and closer in time to – the August 11, 2018 date that Hall found was an equally likely date on which the damage to the nursery occurred.

Plaintiff cites to Hall's deposition testimony regarding "risk computer models" that suggest the potential for periodic three-second wind gusts over a period of ten years to cause wind damage to a metal roof. *See* Response, p. 7 (quoting Hall Depo., p. 102). State Farm argues that such speculative damage caused by wind gusts over a period of years would constitute long term wear and tear not covered by the Policy. The Court does not need to decide this "wear and tear" issue because Hall's ultimate opinion regarding the damage to the nursery is that "the cause of water intrusion above the nursery cannot be fully established." Hall Report, p. 5. Hall repeated this opinion during his deposition, testifying that he had no conclusive opinion regarding

the cause of the water-damaged ceiling above the nursery, and that he could not state "to a good degree of certainty the cause of the openings where the water is getting through." *See* Hall Depo., pp. 49, 99.

Plaintiff has failed to present evidence that raises a genuine issue of material fact that the damage to the nursery ceiling (a) was caused by wind (b) on March 18, 2018. As a result, State Farm is entitled to summary judgment on the breach of contract claim relating to Area of Interest # 2, the nursery.

### C. Area of Interest # 3 - Roof

It appears that the roof is the focus of Plaintiff's claim. Plaintiff and his wife both testified that they contacted State Farm to file the claim in February 2019 when Plaintiff's parents and other family members were getting roof replacements paid for by their insurance companies. *See* Plaintiff's Depo., p. 48; Deposition of Lauren Farris, Exh. E to Motion, p. 9. Plaintiff testified specifically that he wants his roof replaced. *See* Plaintiff's Depo., p. 60.

In his Report, Hall stated that there were "hail-caused indentations as large as 0.75 inch diameter on the ridge cap" of the metal roof. *See* Hall Report, p. 6. Hall described these as "shallow dents" and described the resulting damage as "subtle." *See* Hall Decl., ¶¶ 10, 13. It is undisputed that the State Farm adjuster found a small

hail mark on the metal on a mercury light fixture, and noted this in the State Farm estimate.

The Policy contained a Cosmetic Damage Endorsement that excluded coverage for damage to a metal roof that is:

> loss that alters the physical appearance of the metal roof covering but does not result in the penetration of water through the metal roof covering or does not result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time.

Cosmetic Damage Endorsement, Exh. A-1 to Motion, ¶ 1. The Cosmetic Damage Endorsement is an exclusion to coverage under the Policy. State Farm, as the insurer, "bears the burden of establishing that a policy exclusion applies." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020).

Hall testified that although hail hit the ridge cap of the metal roof, it did not create any penetrations or water intrusion. *See* Hall Depo., p. 111; 62 (no hail impacts that were related to water intrusions, and none that causes penetrations or openings in the roof). Plaintiff admitted that there were no areas of the roof found to be punctured by hail. *See* Plaintiff's Depo., p. 18.

There is no evidence that any hail damage to the metal roof was not merely "cosmetic" as defined by the Policy and within the Cosmetic Damage Endorsement

exclusion. As a result, State Farm is entitled to summary judgment on the breach of contract claim regarding Area of Interest # 3, the metal roof.

### D.     Area of Interest # 4 - Roof of Garage

Hall reported finding "two silicone-covered holes in the R-panel roof over the attached garage." *See* Hall Report, p. 6. Hall stated that these holes "are an as-built condition." *See id.* In his deposition, he testified that in the garage he noticed "two pinpoints of light" that he determined were the result of relocating two screws in the metal roof. *See* Hall Depo., p. 113. Hall explained that the holes were then filled with clear silicone which allowed the light to pass through. *See id.* In his declaration, Hall stated that these silicone-filled holes were "unrelated to the reported date of loss." *See* Hall Decl., ¶ 17. There is no evidence that suggests this is damage to the Property caused by a wind or hail storm on March 18, 2018.

### E.     Conclusion as to Breach of Contract Claim

Plaintiff's causation evidence fails to raise a genuine issue of material fact that the Property sustained damage covered by, and above the deductible in, the Policy. As a result, the Court grants State Farm's Motion for Summary Judgment on the breach of contract claim.

## IV. **EXTRA-CONTRACTUAL CLAIMS**

In addition to the breach of contract claim, Plaintiff asserts extra-contractual claims against State Farm. Specifically, Farris asserts an unfair settlement practices claim under § 541.060 of the Texas Insurance Code, prompt notice and payment claims under § 524.056 and § 524.058 of the Texas Insurance Code, a breach of the duty of good faith and fair dealing, a claim asserting a violation of the Texas Deceptive Trade Practices Act ("DTPA"), and a fraud claim.

### A. **Bad Faith Claims**

Under Texas law, insurers have a duty to deal fairly and in good faith with their insureds when processing claims. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). To support a claim that the insurer breached this duty of good faith and fair dealing, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Id*. The insured is required to prove that the insurer "knew or should have known that it was reasonably clear" that the insured's claim was covered. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997)). "The insured must prove that there were no facts before the insurer which, if believed,

would justify denial of the claim." *Higginbotham*, 103 F.3d at 459. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id*. Where, as here, claims under § 541 of the Texas Insurance Code and the Texas DTPA are joined with a claim for breach of the duty of good faith and fair dealing, and are based on the same theory which underlies the bad faith claim, the statutory claims cannot survive if the bad faith claim fails. *See Umang Residency LLC v. Tri-State Ins. Co. of Minnesota*, 2020 WL 3545659, *3 (W.D. Tex. June 30, 2020) (citing *Higginbotham*, 103 F.3d at 460).

As an initial matter, an "insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). In this case, as discussed above, Plaintiff has not established a right to receive benefits under the Policy. Plaintiff has also failed to present evidence of an injury independent of a right to Policy benefits. An injury "is not 'independent' from the insured's right to receive policy benefits if the injury 'flows' or 'stems' from the denial of that right." *Id*. Plaintiff asserts in his Response that he "has been forced to appear for deposition, respond to discovery requests, allow multiple adjusters and experts access to inspect their [*sic*] Property,

and engage legal representatives to endeavor to obtain policy benefits improperly misrepresented and withheld" by State Farm. *See* Response, p. 18. Each of these alleged injuries "flows or stems" from State Farm's denial of Plaintiff's claim for additional benefits under the Policy. Therefore, absent either a right to receive benefits under the Policy or an injury independent of a right to such benefits, Plaintiff cannot recover on his bad faith claims.

Additionally, Plaintiff has failed to present evidence that raises a genuine issue of material fact on the merits of the bad faith claims. In support of those claims, Plaintiff relies primarily on the allegations in his Original Petition, arguing that he "made allegations that track the statutory language of Chapter 541 of the Texas Insurance Code and the statutory language of the Texas DTPA." *See* Response, p. 20. In support of this argument, Plaintiff cites cases that involve motions to remand based on an allegation of improper joinder. *See id.*, nn.48, 49. A plaintiff cannot avoid summary judgment by relying on his pleadings. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). The standard for prevailing on an improper joinder argument is significantly different from the standard required of a non-movant to

avoid summary judgment.³ Plaintiff's argument, repeated throughout his Response, that he has sufficiently pleaded his bad faith claims is an inadequate basis to avoid summary judgment on those claims.

Evidence in the record fails to raise a genuine issue of material fact in support of Plaintiff's bad faith claims. Photographs of the Property's roof show "shallow dents" to the ridge cap and other "subtle" damage possibly caused by wind or hail. *See* Hall Decl., ¶¶ 10, 13. The Hall Report fails to support Plaintiff's bad faith claim. Indeed, Hall's opinions are generally consistent with those of State Farm's expert, James Crawford, that there was no covered wind or hail damage in excess of the Policy's deductible.

Even if Hall had expressed opinions that materially disagreed with Crawford's opinions, a disagreement between experts is not evidence of bad faith, only of a *bona fide* coverage dispute. There is no evidence that Crawford's opinions were so facially deficient that State Farm knew or should have known that the opinions could not be relied upon and that, instead, there was no reasonable basis to deny Farris's claim. Similarly, there is no evidence in the summary judgment record that raises a triable

---

³ A defendant asserting improper joinder of a non-diverse defendant must demonstrate, based on the pleadings, that there is "no possibility of recovery" by the plaintiff against the in-state defendant. *See, e.g.*, *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013); *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009).

issue regarding whether State Farm or its representatives were biased against Farris when processing its claim. As a result, Plaintiff's evidence shows only a "bona fide coverage dispute" that does not support bad faith claims. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015). On this basis also, State Farm is entitled to summary judgment on the bad faith claims.

### B. Prompt Payment Claims

Plaintiff alleges that State Farm violated the Prompt Payment of Claims requirements of the Texas Insurance Code. Plaintiff asserts a prompt-notice claim under Section 542.056 of the Texas Insurance Code, which requires the insurer generally to "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE § 542.056(a). In this case, it is uncontroverted that State Farm notified Plaintiff of its claim decision within fifteen (15) business days after conducting the inspection of the Property and receiving all necessary information. This satisfies the requirements of § 542.056 and, therefore, State Farm is entitled to summary judgment on this Texas Insurance Code claim.

Plaintiff also alleges that State Farm violated § 542.058 of the Texas Insurance Code. Section 542.058 generally requires the insurer, "after receiving all items,

statements, and forms reasonably requested and required under Section 542.055," to make payment of the claim within sixty days. TEX. INS. CODE § 542.058(a). To prevail on a claim under § 524.058, "it is not necessary for a plaintiff to prove that the insurer acted wrongfully or in bad faith." *Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020) (citing *Biasatti v. GuideOne Nat'l Ins. Co.*, 601 S.W.3d 792, 794-95 (Tex. 2020)). "The statute requires only *liability under the policy* and a failure to comply with the timing requirements" of § 524.058. *Id*. (emphasis added).

As discussed above, Plaintiff has failed to present evidence that raises a genuine issue of material fact as to State Farm's liability under the Policy. As a result, State Farm is entitled to summary judgment on Plaintiff's § 524.058 claim.

### C. Fraud Claim

Plaintiff asserts a fraud claim against State Farm. Under Texas law, the elements of common law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

Plaintiff in his Response does not address the elements of a fraud claim and, instead, discusses "unconscionable conduct." *See* Response, pp. 24-25. Plaintiff has failed to present evidence that any State Farm representative made a material, false representation. Plaintiff has failed to present evidence that the State Farm representative made the false representation knowing that it was false or recklessly without knowledge of the truth and as a positive assertion. Plaintiff has failed to present any evidence that he relied on an alleged misrepresentation by State Farm. Plaintiff's wife testified under oath that she did not believe State Farm engaged in fraud. *See* Lauren Farris Depo., p. 43. Plaintiff testified that the State Farm adjuster stated that unless there were holes in the roof, it would not be covered under the Policy, and that the dents on the ridge cap of the roof were cosmetic damage – statements with which Plaintiff disagreed. *See* Plaintiff's Depo., pp. 40-42. There is no evidence, however, that the State Farm adjuster knew these statements were false when he made them or that Plaintiff relied on them in any way.

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his fraud claim. As a result, State Farm is entitled to summary judgment on this claim.

## V.  CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact in connection with the breach of contract claim.  To the extent any extra-contractual claim survive the entry of summary judgment on the breach of contract claim, Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of those claims.  As a result, it is hereby

**ORDERED** that State Farm's Motion for Summary Judgment [Doc. # 19] is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **4th** day of **February, 2021**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE